**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **RAYMOND CANALES,** § | |
| Petitioner, § | |
| § | |
| v. § | |
| § | Civil Action No. 4:08-CV-689-A |
| **NATHANIEL QUARTERMAN,** Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| Respondent. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**I. FINDINGS AND CONCLUSIONS**

**A. NATURE OF THE CASE**

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

**B. PARTIES**

Petitioner Raymond Canales, TDCJ-ID #1272684, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Tennessee Colony, Texas.

Respondent Nathaniel Quarterman is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

**C. FACTUAL AND PROCEDURAL HISTORY**

In June 2000 Canales was indicted for capital murder in the death of John Doe, an unknown

individual, in cause number 0841049D in Tarrant County Texas. The state later refiled the case and, on September 29, 2004, reindicted Canales for the offense in cause number 0950109R. The original cause was dismissed. (Clerk's R. at 2-3, 7, 166) On November 16, 2004, Canales's trial commenced. The jury found Canales guilty of the offense, and the trial court assessed a mandatory life sentence. (Clerk's R. at 2, 192) Canales appealed his conviction, but the Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused Canales's petition for discretionary review. *Canales v. Texas*, No. 2-04-555-CR, slip op. (Tex. App.–Fort Worth Mar. 23, 2006); *Canales v. Texas*, PDR No. 571-06. Canales did not seek writ of certiorari. (Petition at 3) Canales also filed a state application for writ of habeas corpus raising one or more of the claims presented herein, which was denied by the Court of Criminal Appeals without written order on the findings of the trial court. *Ex parte Canales*, Application No. WR-68,856-01 & -02, at cover. This federal petition for writ of habeas corpus followed.

    At trial, the evidence showed that on the night of April 5, 2002, the Fort Worth police department received information from Nathan Walker, a transient, regarding a possible dead body lying in a vacant lot near an intersection on the east side of downtown Fort Worth. (RR., vol. 4, at 32-46) Bicycle Officer John Danna was dispatched to investigate the information and found the body of a man lying face down. The officer notified his supervisors and MedStar. According to Crime Scene Officer Weldon Thompson, the deceased man had suffered massive injuries to his face and was found with his legs crossed, consistent with being rolled over, and one rear pocket of his pants turned inside out. (RR, vol. 4, at 48-125) They collected a piece of lumber with blood on it and four beer bottles at the scene. Six latent prints were recovered from the bottles, none of which was of a quality to be compared. Detective Thomas Boetcher, who was assigned to the case, arrived

2

at the scene and learned that the victim had frequented a nearby convenience store on the day in question and was last seen in the company of a man known as "Julio," Canales's nickname, and another man. (RR, vol. 5, at 96-130, 135-) Nathan Walker was able to give the detective a description of Julio and took officers to the apartment of Mary Joshua, where Julio sometimes stayed. Canales answered the door and stepped outside the apartment, at which point Joshua motioned to the detective to enter the apartment. Joshua appeared excited and afraid. After the detective entered the apartment, Joshua directed him to blood-stained clothing, a washcloth, and an Altoids box containing damp money. Shortly thereafter, Canales was placed under arrest. At the police station, Canales was asked to remove his shoes, which appeared blood spattered. The blood on the piece of lumber and on Canales's pants and shoes matched that of the victim. (RR, vol. 5, at 190-219; vol. 6, at 8-77) The medical examiner determined that the victim had consumed cocaine and a large quantity of alcohol before his death and that he died from multiple blunt force injuries to the head. The identity of the deceased man was never determined. (RR, vol. 4, at 129-53) Although Mary Joshua died in September 2002, her daughters testified at trial regarding statements made by Canales to Joshua, which further implicated Canales in the crime.

### D. ISSUES

Canales states the following grounds for habeas relief:

(1)   His warrantless arrest was illegal and his conviction was obtained by use of evidence gained from his illegal arrest and unlawful search and seizure (grounds one, two, and three);

(2)   The indictment was defective (ground four);

(3)   His conviction was obtained by use of coerced statements from state witnesses (ground five);

(4)   He received ineffective assistance of counsel on appeal (ground six);

3

    (5)    His pro se motions were not addressed during trial (ground seven);

    (6)    There are inaccuracies in the reporter's record (ground eight);

    (7)    His conviction was obtained by use of non-credible informants (ground nine); and

    (8)    The trial court committed misconduct (ground ten). (Petition at 7-8B)

### E. RULE 5 STATEMENT

Quarterman admits that Canales has sufficiently exhausted his state remedies with regard to the claims presented as required by 28 U.S.C. § 2254(b)(1). (Resp't Answer at 5)

### F. DISCUSSION

#### 1. *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

Further, federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Factual determinations by a state court are presumed correct absent clear and convincing evidence to the contrary, and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2), (e); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams*, 529 U.S. at 399. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written opinion it is an adjudication on the merits, which is entitled to the presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. *Fourth Amendment Claims*

Canales claims the search of Mary Joshua's apartment without a search warrant or consent, his warrantless arrest, and the seizure of his tennis shoes by the police were unconstitutional. (Petition at 7; Pet'r Mtn. for Leave to File at 6-12) Under *Stone v. Powell,* 428 U.S. 465, 493-95 (1976), a federal court may not grant habeas relief based on a Fourth Amendment violation where the state has provided an opportunity for full and fair litigation of the issue. This rule applies to all claims arising under the Fourth Amendment. *See e.g., Cardwell v. Taylor,* 461 U.S. 571, 572 (1986) (arrest); *Williams*, 16 F.3d at 637-38 (search and seizure). In order to obtain postconviction relief in federal court, a petitioner must plead and prove that the state court proceeding was inadequate. *See Davis v. Blackburn,* 803 F.2d 1371, 1372 (5th Cir. 1986). Canales was afforded a full and fair opportunity to challenge the search of Joshua's apartment, his arrest, and the seizure of evidence at

5

trial, on appeal, or on state postconviction habeas review.  (State Habeas R. at 107-08, 113-14, 125-33)  Therefore, the *Stone* bar applies, barring these claims.

### *3. Invalid or Defective Indictment*

Canales claims the indictment was constitutionally invalid or defective because it failed to identify the victim and specify the deadly weapon used so as to give him adequate notice to prepare a defense.  (Petition at 8; Pet'r Mtn. for Leave to File at 12-13)  As previously noted, Canales was originally indicted in June 2002.  The original indictment alleged that he did–

> Then and there intentionally cause the death of an individual, JOHN DOE, by striking him with or against an object the exact nature of which is unknown to the grand jury and the said defendant was then and there in the course of committing or attempting to commit the offense of robbery of JOHN DOE.  (Clerk's R. at 7)

> The reindictment alleged that he did–

> Then and there intentionally cause the death of an individual, John Doe, by striking him with or against a piece of lumber or by striking him with or against an object the exact nature of which is unknown to the Grand Jury, and the said defendant was then and there in the course of committing or attempting to commit the offense of Robbery of John Doe.  (Clerk's R. at 2)

In addition, the reindictment included the DNA profile of the victim.  (Clerk's R. at 2-3)

On November 2, 2004, during a pretrial hearing, the trial court heard Canales's motion to quash based on alleged deficiencies in the original indictment.  (RR, vol. 2, at 4-6)  The trial court concluded that the allegations in the reindictment, in conjunction with evidence obtained by Canales through discovery, including the medical examiner's report as to the cause of death, were sufficient to put Canales on notice of the charges against him.  (*Id*. at 65-69)  Relying on Texas law, the state habeas court and the Texas Court of Criminal Appeals similarly rejected Canales's claim on habeas review.  (State Habeas R. at 109, 114-15)

The sufficiency of a state indictment is not cognizable under § 2254 unless it can be shown

6

that the indictment is so defective that the convicting court had no jurisdiction. *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994); *Branch v. Estelle*, 631 F.3d 1229, 1233 (5th Cir. 1980). Furthermore, when the state courts have held that the indictment is sufficient under state law, a federal habeas court need not consider such a claim. *Alexander v. McCotter,* 775 F.2d 595, 598 (5th Cir. 1985). Canales's claim was presented to and rejected by the state courts in Canales's state habeas application. Our review of the claim is therefore precluded. *See Evans v. Cain*, ___ F.3d ___, 2009 WL 2370879, at *3 (5th Cir. Aug. 4, 2009).

*4. Coerced and False Statements*

Canales claims the trial judge improperly led witnesses on how to testify and answer questions and the prosecution knowingly presented, or failed to correct, false testimony from Detective Boetcher. The state habeas court rejected these claims on the basis that the record refuted the allegations and because Canales had otherwise presented no evidentiary proof of the claims. (State Habeas R. at 109, 115) This failure of proof renders Canales's claims wholly conclusory. Absent evidence in the record, a federal court cannot consider a habeas petitioner's bald assertions on a critical issue to be of probative evidentiary value. *See Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983).

Additionally, Canales claims the statements of Dorris West, one of the convenience store clerks, and Cheryl and Sonia Thompson were not in writing, were coerced, and were withheld from the defense in violation of the state's open file policy and *Brady v. Maryland*, 373 U.S. 83 (1963), and that their surprise testimony at trial was used to obtain his conviction. (Petition at 8A; Pet'r Mtn. for Leave to File at 13-16) On the night of the offense, law enforcement officers contacted and interviewed Dorris West, one of the convenience store clerks. West testified at trial that the victim

came into the store that night with Julio and another man he did not recognize. Julio had an argument with the victim, paid for some beer, and left with the other man. After paying for his own beer, the victim, who had what appeared to a large amount of money in his hand, left the store in the direction of Canales and a third man. When the victim approached Canales, Canales turned and made a threatening gesture toward him. The victim turned back toward the store and then turned back and continued to follow the two men. Canales again turned and made an aggressive gesture toward the victim before the three walked out of sight. (RR, vol. 5, at 96-130) Cheryl and Sonia Thompson were contacted and interviewed at a later date during the course of the investigation. They had not provided statements to law enforcement at the time of the offense. Cheryl Thompson testified at trial that she was in the apartment when Julio returned that night and heard Julio tell her mother that he killed a man because the man would not give him his money. (RR, vol. 4, at 185-88) Sonia Thompson testified that her mother called her on the night in question and she heard Jolio threaten to kill her mother if she told anyone what he had done. (RR, vol. 5, at 171-88)

  The state habeas court found no legal authority that witnesses of a crime are required to give written, as opposed to oral, statements. The court further found Canales had presented no evidence that the state coerced witnesses to testify. The court further found that, because the state filed witness lists including the names of the three witnesses, the defense was put on notice as to who the state was preparing to call for trial, and, because of the state's open file policy, where to contact the witnesses. (Clerk's R. at 109, 115) Based on these findings, the Texas Court of Criminal Appeals rejected the claims.

  Canales has failed to rebut the presumptive correctness of the state court's findings on the issue. Mere conclusory statements of false and perjured testimony do not raise a constitutional issue

8

in a habeas case. *Schlang v. Heard,* 691 F.2d 796, 799 (5th Cir. 1982). Further, to establish a *Brady* violation, a petitioner must prove the following: (1) the prosecutor suppressed or withheld evidence, (2) which was favorable, and (3) material to the defense. *Brady*, 373 U.S. at 87. Clearly, the witness testimony was not favorable to the defense. Nevertheless, a habeas petitioner is not entitled to relief based on conclusory and speculative allegations of a *Brady* violation. *Murphy v. Johnson,* 205 F.3d 809, 814 (5th Cir. 2000). These claims should be denied.

### *5. Ineffective Assistance of Counsel*

Canales claims he received ineffective assistance of appellate counsel because counsel (1) failed to bring all points of error to the attention of the appellate court, (2) filed briefs that were inaccurate, (3) failed to file a request under the Freedom of Information Act, (4) failed to interview witnesses or investigate the case, (5) failed to contact or identify himself to Canales, (6) failed to file a motion for rehearing on the petition for discretionary review, and (7) failed to bring fourth any objections made during trial in appellant's brief. (Pet'r Motion for Leave to File at 16-19)

A criminal defendant has a constitutional right to the effective assistance of counsel on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the familiar standards set forth in *Strickland v. Washington*. *Strickland*, 466 U.S. at 668. *See also Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate counsel). In this context, to establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance he would have prevailed on appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th

9

Cir. 1991). A court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. at 668, 688-89.

The state habeas court conducted a hearing by affidavit, in which appellate counsel addressed Canales's claims. (State Habeas R. at 96-97) Based on counsel's affidavit, the state habeas court entered findings refuting Canales's claims, and, applying the *Strickland* standard, concluded Canales had received effective assistance of counsel, largely due to a lack of any evidentiary or legal basis for the claims. (State Habeas R. at 96-97, 110-11, 115-17) On those findings, the Texas Court of Criminal Appeals rejected Canales's claims. Deferring to the state court's factual determinations, the state courts' determination of the claims was not objectively unreasonable. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002). Unsubstantiated allegations of ineffective assistance are insufficient to support an ineffective assistance claim. *See Ross*, 694 F.2d at 1011.

Appellate counsel is not required to raise every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000) (applying *Strickland* standard to ineffective assistance claims against appellate counsel). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). A petitioner must show that appellate counsel's failure to raise an issue worked to his prejudice–*i.e.,* that but for counsel's errors he would have prevailed on his appeal.[1] *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991). Canales has not satisfied this requirement. Canales has identified no potentially meritorious points of error that his appellate

---

[1] The performance component of *Strickland* need not be addressed first, and an ineffective assistance claim may be disposed of on the ground of lack of sufficient prejudice. *Robbins*, 528 U.S. at 286 n.14; *Strickland*, 466 U.S. at 697.

counsel could or should have included as a part of his appellate brief. Nor does prejudice result from appellate counsel's failure to assert a meritless claim or a meritless argument. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Thus, it follows, that counsel was not ineffective for failing to raise the issues on appeal.

### *6. Trial Court Error and Misconduct*

Canales claims the trial court erred by not addressing his pro se motions. (Petition at 8A-B; Pet'r Mtn. for Leave to File at 19, 22) Although a defendant has a constitutional right to represent himself, there is no right under state or federal law to hybrid representation. (State Habeas R. at 111, 117) *See United States v. Mikolajczyk*, 137 F.3d 237, 246 (5th Cir. 1998) (providing defendant has right to represent himself, or to receive competent representation from an attorney, but not both). Under these circumstances, the trial court was not required to rule on Canales's *pro se* motions.

Canales also claims the trial court engaged in judicial misconduct by failing to maintain complete attention on the trial proceedings. He directs the court to one instance when the state lodged an objection during defense counsel's cross-examination of a witness, at which point the trial judge apologized and stated that he was signing some paperwork and would have the court reporter read the question back to make a ruling. (RR, vol. 5, at 165) The state then withdrew its objection.

The state habeas court determined that, in the absence of any evidence that Canales was harmed by the trial court momentarily directing its attention on another matter at that time or that the trial court failed to pay attention throughout the remainder of the trial, Canales had failed to show by a preponderance of the evidence that the trial court's error contributed to his conviction, and, thus, Canales had failed to prove a constitutional violation occurred. (State Habeas R. at 112, 118) Canales fails to allege a specific constitutional violation under this claim or cite to authority

11

which would indicate the state courts' decision is contrary to, or involves an unreasonable application of, clearly established federal law.  Nor is the state court's decision based on an unreasonable determination of the facts in light of the state court record.

### 7. *Inaccuracies in the Reporter's Record*

Canales claims he contacted his attorney regarding alleged inaccuracies in the reporter's record involving the testimony of Detective Boetcher and Cheryl and Sonia Thompson.  (Petition at 8B; Pet'r Mtn. for Leave to File at 19-20; Pet'r "Factual Documentation" at 7-10)  Counsel averred in his affidavit that the record was properly taken and certified.  (State Habeas R. at 106)  In state court, and now, Canales presented no evidentiary basis to support his assertions.  (*Id.* at 117)  Without substantiation in the record, a federal court cannot consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative evidentiary value.  *Ross,* 694 F.2d at 1011-12.

### 8. *Non-Credible Informants*

Canales claims his conviction was obtained by the use of out-of-court statements to Detective Boetcher by Mary Joshua, who was deceased at the time of trial, and Walker, a known liar, identifying him as the person who killed the victim, in violation of his confrontation rights.  (Petition at 8B; Pet'r Motion for Leave to File at 20-22)

The Confrontation Clause permits the admission of an out-of-court testimonial statement only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.  *Crawford v. Washington,* 541 U.S. 36, 59 (2004).  As noted by the state habeas court, Canales's *Crawford* objection to Joshua's out-of-court statements to law enforcement that Canales was the one who killed the man under the bridge, was sustained at trial.  The habeas court

found that the jury only heard that Mary Joshua motioned for the officer to come in, was very agitated, gave Detective Boetcher some evidence, and is now deceased. (State Habeas R. at 112) Further, the state habeas court found the jury only heard that Nathan Walker took the detective to the residence he believed Julio could be found. Thus, the state habeas court determined the jury did not hear testimony that Joshua or Walker advised law enforcement that Canales was involved in the offense, and, thus, concluded there was no evidence that Canales's conviction was obtained by the use of out-of-court statements by Joshua or Walker. (*Id.* at 111-12, 117) The state court's findings are supported by the record, and Canales has failed to demonstrate that the state courts' application of *Crawford* to his claims was unreasonable in light of the evidence presented in the state courts.

## II.  RECOMMENDATION

Canales's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until September 10, 2009. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing

before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IV.  ORDER

Under 28 U.S.C. § 636, it is ORDERED that each party is granted until September 10, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August 20, 2009.

      /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE